## No. 6221.

### ROBERT O. HÉBERT ET AL. VS. JOHN H. JACKSON, SHERIFF, ET AL.

General Hebert, by leaving the Federal lines and joining the enemies of the United States, forfeited his trust as executor, and the office became vacant. He was never re-appointed to the office after the war, and he had no authority to bind or to represent the succession of the heirs after the abandonment of the trust.

APPEAL from the Fifth Judicial District Court, parish of Iberville. *Dewing, J. George Wailes, R. N. Sims,* and *A. & E. B. Talbot,* for plaintiffs and appellees. *Samuel Matthews* and *J. Hamilton Rills,* for defendants and appellants.

LUDELING, C. J. In 1861 Mrs. Vaughn died. She left a will, in which Paul O. Hébert was appointed testamentary executor. The will was duly probated, and Paul O. Hébert qualified as executor early in the year 1861. After this, Paul O. Hébert joined the Confederate army, and during the remainder of the rebellion, in the capacity of an officer in said army, he bore arms against his country.

In the Succession of Poindexter, reported in 19 An. 22, and in the case of Vogel, reported in 20 An. 81, it was decided that "by refusing to take the oath of allegiance, and going beyond the jurisdiction of the proper authority, (the executor) became *functus officio.*"

General Hébert by leaving the Federal lines and joining the enemies of the United States forfeited his trust, and the office of executor was vacant. He was never re-appointed to the office after the war, and he had no authority to bind or to represent the succession of the heirs. after the abandonment of his trust.

In April, 1868, Wade H. Gilbert instituted suit against Paul O. Hébert, as testamentary executor of Mrs. Vaughn's estate, for wages for services rendered to said succession, under a contract with said Hébert as executor; and in 1869 Paul O. Hébert, as executor, confessed judgment. In 1874 execution was issued under this judgment, and the heirs of Mrs. Vaughn enjoined the sale on the ground, among others, that the judg-

31

ment is an absolute nullity, because P. O. Hébert, who alone was cited in that suit, was *functus officio*, and the succession and heirs were not parties to the suit. The objection is well founded, for the reason above stated. A judgment rendered, when the defendants have neither been cited nor made an appearance in the suit, is an absolute nullity. The article 149 of the constitution has no application to the suit. The judgment attacked in this case was rendered *after* the adoption of the constitution, and the provisions of that article can not by any stretch of construction be made to revive a trust abandoned.

It is therefore ordered that the judgment of the lower court perpetuating the injunction and declaring the judgment in the suit of Wade H. Gilbert vs. Paul O. Hébert, executor, null and void, be affirmed with costs.

WYLY, J., *dissenting*. In April, 1861, the will of Mrs. Harriet Vaughn was probated in the parish of Iberville, and Paul O. Hébert was confirmed and qualified as testamentary executor.

By the terms of the will he had seizin of all the property of the succession, consisting principally of a plantation known as " White Castle plantation," and the slaves and movables thereon.

The succession has never been settled, and said executor to this day holds possession, administering the same as testamentary executor. He has been recognized by the court, by the heirs, and by the creditors in numerous suits that have been instituted and conducted contradictorily with him as testamentary executor.

Prior to the death of Mrs. Vaughn, Wade H. Gilbert was employed as overseer of the " White Castle plantation," and he was retained in said employment by Hébert when he became testamentary executor in April, 1861.

Gilbert remained in charge of said plantation as overseer until January, 1867. He subsequently died, and his widow and natural tutrix of their minor children sued for his salary during the term of said employment, and in 1869 recovered judgment on the confession of Paul O. Hébert, testamentary executor, for $19,923 56. The widow of Wade H. Gilbert and natural tutrix of their minor children instituted proceedings under articles 990, 991, and 992 of the Code of Practice to enforce the payment of said judgment, and on the thirtieth May, 1874, the parish court made the rule absolute, and ordered the sale of property to pay said judgment. The heirs of Mrs. Vaughn filed oppositions, which were dismissed, and on appeal the judgment of the parish court was affirmed. Plaintiffs, who are the heirs of Mrs. Vaughn, now bring this suit in the district court to annul the judgment which the widow and heirs of Gilbert obtained against Paul O. Hébert, testamentary executor, in 1869, on

various grounds set out in their petition, and they obtained an injunction restraining the sale of property to pay said judgment pursuant to an order of the parish court rendered contradictorily with all parties in interest—the testamentary executor and the heirs.

As the action to revise the judgment of 1869 is barred by the prescription pleaded, it is unnecessary to state the grounds of nullity set out in the petition, except the averment that said judgment was an absolute nullity, because Hébert was not testamentary executor in 1869; because in August, 1861, subsequent to his appointment as testamentary executor, he joined the rebel army and served as an officer therein during the war, whereby he became *functus officio*, and could not thereafter act as testamentary executor or in any manner represent the succession of Mrs. Vaughn. This is a question which, in my opinion, the district court was without jurisdiction to entertain; and the judgment of the probate court and the letters of executorship whereby Paul O. Hébert is now and has since 1861 been administering said succession of Mrs. Vaughn, can not be questioned collaterally. The parish court having jurisdiction of the succession alone can determine, in the first instance, the right of Hébert to administer said succession.

While Hébert holds letters of executorship, emanating from the probate court, and while he is recognized by that court, as he has been from April, 1861, to the present day, in all matters and litigations relating to the succession of Mrs. Vaughn, and while he remains in possession of said succession in the capacity of testamentary executor by authority of the probate court, the district court has no jurisdiction to question the authority of Hébert to act as executor, much less to decide that from any cause his appointment has ceased to be valid, and he no longer has authority to represent said succession.

How can the district court, which can not appoint a curator, an administrator, or an executor, and which is wholly without jurisdiction in probate matters (the appointment or authority of an executor being purely a probate matter), undertake to decide upon the authority of Paul O. Hébert to act as testamentary executor of the will of Mrs. Vaughn?

If the district court has no jurisdiction to entertain a suit to destitute Paul O. Hébert of the office of testamentary executor, because it is a probate matter confided by the constitution to the parish court, where does it get jurisdiction to attack collaterally the judgment appointing him, or collaterally to question his authority to act as executor?

Where does the district court get jurisdiction to decide that Hébert has committed treason against the United States, the greatest crime known to the law, and as a consequence thereof he became *functus officio*, and was absolutely without authority thereafter to act as executor of the succession of Mrs. Vaughn? I apprehend that such a question can

not be raised in a State court, much less in a civil suit to which Hébert is not a party.

The incapacity which plaintiffs, the heirs of Mrs. Vaughn and the children of Hébert, allege that their father incurred from the part he took in the rebellion must be regarded as a punishment for the illegal act or acts committed by him subsequent to his appointment as executor; yet there is no law denouncing such punishment, much less authorizing its infliction in advance of a conviction after regular trial of the offender. Until the government of the United States sees fit to prosecute Hébert for the alleged offense, no punishment or penalty affixed thereto can be visited on him, especially by a State court in a civil suit to which he is not a party.

In my opinion, Hébert is the lawful testamentary executor of the succession of Mrs. Vaughn, of which he has had seizin and control by authority of the probate court since his appointment in April, 1861; and he should be recognized as such by the district court and by all other courts, until he is destituted of the office in a proceeding by the parish court of the parish of Iberville, which has jurisdiction of the succession. Upon this point the jurisprudence of this court has long since been settled.

In the case of Leckie, tutor, vs. Fenner, 9 R. 189, where the plaintiff brought suit as tutor to recover of the defendant in the district court certain property and the objection was raised to the authority of plaintiff to sue, and it was denied that he was tutor, upon that issue the case was tried and disposed of in the district court. This court said: "The judge has not given us any reasons which induced him to dismiss the suit; but the counsel on both sides agree that it was because the judge thought the appointment of the tutor was illegal and null. In this we think the judge erred. We can not undertake to decide whether the appointment of the tutor was legal or not; but if it were illegal, the district court of the parish of Ouachita had no power or authority to inquire into it. As a general rule, one inferior tribunal has no power to pass on the decrees or judgments of another, unless they have some appellate power; therefore it was said in 6 La. 656, that 'the correctness of the judgment of the court of probates can not be questioned in the district court.' In 3 R. 130, it was held that the jurisdiction of the court of probates can not be inquired into collaterally, and that letters of executorship were conclusive of what they purport to establish, until they have been annulled."

Here Paul O. Hébert was duly appointed executor, his letters of executorship have never been annulled, and he is and has been in possession of said succession by authority of the probate court since April, 1861.

Until he is destituted of office by the probate court, his capacity as

executor can not be questioned in the district court. The position of Hébert in regard to this succession is that of mandatary in its simplest form. At the time of his appointment there was no incapacity in him to perform the trust, and there was no want of authority in the probate court which appointed him. Assuming that his conduct during the war disqualified him from discharging the duties confided to him, when the war ended and the amnesty proclamation was issued, that disqualification, if such there was, terminated, and Hébert could discharge the trust until the authority was withdrawn by the court which granted it.

If General Hébert had appointed an agent in New York before the war, that agent might not do an act thereunder to bind his principal while the latter was engaged in the rebellion; but when the war ended, when the incapacity of the principal ceased, the agent could act under the power previously granted until it was withdrawn. So if a merchant of New York had appointed General Hébert his attorney in fact before the war, the latter might not be able to discharge the trust during the existence of the rebellion; but when the war ended and his incapacity ceased he could act as mandatary, unless the power of attorney had been withdrawn. In 1869, when the widow and heirs of Wade H. Gilbert recovered judgment against Paul O. Hébert, testamentary executor of the will of Mrs. Vaughn, there was no incapacity in him to represent the succession then under administration and in his possession by authority of the probate court. He could perform the trust, and the court which appointed him had not annulled the letters of executorship.

What were the creditors of that succession to do, when in 1869 they found Hébert in possession as testamentary executor, and he was recognized by the probate court? Was it their duty to sue to destitute him of office, because at one time subsequent to his appointment he had served as an officer in the Confederate army? If they failed to do so from ignorance of the fact that he had engaged in the rebel service, or otherwise, are their rights to be destroyed, because they merged their claims into judgment contradictorily with him as testamentary executor in possession of the succession under authority of the court having jurisdiction thereof? I think not. I think if the judgment obtained by the widow and heirs of Gilbert in 1869 is pronounced an absolute nullity, they will be despoiled of their property, because by lapse of time the bar of prescription can successfully be opposed to their claim, and this is the evident object of plaintiffs. Under the circumstances, I can not consent that all the acknowledged creditors and all the judgment creditors of the succession of Mrs. Vaughn have lost their claims, and that the plaintiffs, the heirs, can take the property free of liabilities.

Plaintiffs, however, rely on the cases of the Succession of Poindexter, 19 An. 22, and the Succession of Vogel, 20 An. 81, to show that by join-

ing the Confederate army Hébert became *functus officio*, and lost all right to act as executor thereafter. It is true that a remark like that was made in those opinions, but it was not necessary to the decisions, and is therefore not authoritative.

In those cases the question was whether a curator and executor who had left the city of New Orleans and had refused to take the oath of allegiance were entitled to commissions for the time they were absent and beyond the jurisdiction of the court which appointed them. Of course during the period of their absence these fiduciaries ought not to have been remunerated, because, so far from being beneficial, their absence was injurious to the succession.

This court has frequently held that a curator or administrator whose services have not been beneficial to the succession under his administration ought not to recover the commissions allowed by law. See the Succession of Caballero, and numerous other decisions of this court.

Here the case is entirely different, and the question is whether a judgment rendered in 1869 contradictorily with Paul O. Hébert. testamentary executor, and in possession of the succession of Mrs. Vaughn by authority of the court having jurisdiction of said succession, is an absolute nullity, because he was incapable of representing said succession, notwithstanding his letters of executorship have never been revoked.

For the reason stated I deem it my duty to dissent in this case.

Rehearing refused.